# Georgia Pine Lumber Co. *v.* Central Lumber & Timber Co.

### *Assumpsit.*

(Decided November 12, 1912.   60 South. 512.)

1. *Sales; Contract; Non-Performance; Waiver.*—Where a buyer of lumber voluntarily paid wharfage charges which under the contract of sale was to be paid by the seller, and charged the same against the seller to be deducted from the price, without making any demand on the seller for repayment, the failure of the seller to pay charges did not deprive him of the right to sue for the price; the voluntary payment by the buyer being a waiver by him of any insistence that the seller's duty had not been performed.

2. *Same; Executed Contract; Remedy.*—Where the wharfage charges are voluntarily paid by the buyer, and the seller delivered the lumber under a contract for a sale of a specified number of feet at so much per M. feet, free alongside a vessel on the wharf, the contract was executed and the seller may recover the price under the common counts, subject to a set off for the wharfage charges paid by the buyer.

3. *Same; Entire Contract.*—A contract for the sale of a designated quantity of lumber for delivery free alongside a vessel at a specified price per M. feet, is a contract to deliver a certain number

[Georgia Pine Lumber Co. v. Central Lumber & Timber Co.]

of M. feet of lumber at a stipulated price per M. feet, and is not an entire contract, and the buyer accepting the lumber and receiving the benefit thereof, with knowledge that the seller had not paid the wharfage charges, cannot defeat a recovery of the price.

4. *Contracts; Performance; Quantum Meruit.*—Where a party to a contract has substantially performed and the benefits have been received by the other party, general indebitatus assumpsit lies to recover on the common counts at contract rates, less damages sustained for a failure to make complete performance.

5. *Appeal and Error; Findings; Presumption.*—Where the court sits without a jury, its findings on the facts will not be reviewed unless they fail to support the verdict rendered.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by the Central Lumber & Timber Company against the Georgia Pine & Lumber Company. Judgment for plaintiff and defendant appeals. Affirmed.

PILLANS, HANAW & PILLANS, for appellant. Under the facts in this case, indebitatus assumpsit will not lie.—*Maxwell v. Moore*, 163 Ala. 490; *Smith v. Sharpe*, 162 Ala. 433; *Papot v. Howard*, 154 Ala. 310; *Carbon C. Co. v. Cunningham*, 153 Ala. 573; *Martin v. Massey*, 127 Ala. 504; *Haas v. Iron Works*, 88 Ala. 323. It is insisted that by a failure to pay wharfage charges as agreed, the contract was not complete, and recovery could only be had upon special counts. Counsel discuss the doctrine of waiver, and in support thereof cite. —*Martin v. Massey, supra;* 28 A. E. Enc. of Law, 526-528 and 531.

BROOKS & STOUTZ, for appellee. The case of *Martin v. Massey,* and the other authorities cited by appellant give appellant no support when applied to the facts in this case. Counsel discuss the merits of the assignments, but without citation.

PELHAM, J.—This action was brought by the appellee against the appellant in the court below on the com-

mon counts in assumpsit, and was tried by the court without a jury. It appears from the finding of the court and the evidence set out, upon which the finding was made, that the recovery was on the third count for goods, wares, and merchandise sold, etc. The defendant pleaded the general issue and several special pleas setting up various breaches of the contract under which the goods were to be delivered, and claiming certain sums for such breaches, which it offered in said pleas to set off against the plaintiff's demand. Some of the cross-demands set up by appellant were found by the court in appellant's favor, while others were not allowed, but no assignment of error is based on, or grows out of, or arises under, the special pleas or the issues tendered or made by them.

The evidence, without material conflict, shows that the plaintiff and defendant entered into a contract by the terms of which the plaintiff agreed to sell, and the defendant agreed to buy, a certain quantity of lumber described in the contract, amounting to about 300,000 feet. Under the terms of the contract the lumber was to be delivered "price $23 F. A. S., vessel Mobile, Alabama." The price of $23, used in the connection shown by the contract, has a fixed and definite meaning in the lumber and timber trade, as appeared from the evidence, and this meaning is that the price to be paid by the purchaser is $23 per thousand feet. The letters "F. A. S." were also shown by the evidence to be a well-known trade designation meaning "free alongside." The use of these letters, together with the connection in which they were used in the contract, carried with it the signification and agreement upon the part of the appellee, as seller of the lumber, to deliver it on the wharf at Mobile, Ala., free of all freight and handling charges, and also all charges for wharfage, where it

could be "lifted" or put on board the vessel by the appellant; the total cost to the purchaser at the vessel side being the price named of $23 per thousand feet. The evidence is also without conflict that the appellant paid these wharfage charges on the lumber in question, , amounting to $53.41, to the owner of the wharf, the Mobile Docks Company. One of the sections of appellant's pleas claiming damages for a breach of the contract laid the breach in the failure of appellee to pay this wharfage, and claimed the amount paid on this account by appellant ($53.41) as a set-off against the demand of the appellee. It is affirmatively shown, without controversy, that the finding of the court was in the appellant's favor for this item of wharfage claimed by it in its plea of set-off, and that this amount was deducted from the sum found to be due the appellee, and that judgment was accordingly entered in conformity with this finding.

The question does not seem to have been raised or considered in the court below, but is strenuously insisted upon in an ingenious brief filed here; that inasmuch as the evidence without conflict shows that the lumber was to be delivered by the appellee on the wharf alongside the vessel free of wharfage charges, and also shows that these charges were paid, not by the appellee, but by the appellant, the appellee cannot recover even in an action on the common counts in assumpsit for the goods sold and received by the appellant because of appellee's failure to perform the entire contract as a whole, in that appellee did not pay the wharfage charges.

In support of his contention appellant cites and seems to principally rely on the case of *Martin v. Massie,* 127 Ala. 504, 29 South. 31. There are several distinguishing features between the case we have before us for consideration and that case that make it inapplicable to

the case in hand. The facts in that case show an undisputed voluntary abandonment of the contract by the plaintiff, who sued to recover for partial performance of services rendered under an entire contract, and a refusal to render a material part of the service provided for under the terms of the contract. No such abandonment or refusal is shown by the facts in the instant case. On the contrary, it is shown in this case that. the bill for wharfage was made out by the Dock Company to which it was payable against the appellant company, who paid it voluntarily, or at least without objection, and charged it against the appellee to be deducted from the purchase price to be paid by appellant to appellee for the lumber. No demand is shown to have been made on the appellee, at any time before suit was brought by appellee for the balance due it, for the wharfage paid by appellant, and there is nothing in the evidence to show that this method of paying wharfage charges was otherwise than at the volition of, and entirely satisfactory to, the appellant. Certainly there is nothing going to show an abandonment of the contract on the appellee's part, and a refusal to perform, going to the root of the contract, could not be based alone upon the fact that the appellant voluntarily paid the wharfage without refusal by, or even demand made for it upon the appellee. For aught appearing in the evidence to the contrary, the appellant paid the wharfage charges without the appellee's having had an opportunity of paying them. How could appellee's failure to perform this part of the contract, if not given an opportunity to do so by an act of the appellant, be said to be a refusal? The appellant could not be allowed to prevent the full performance by voluntary payment of the wharfage and then be heard to say that the contract had not been fully

performed because of the failure of the appellee to pay this wharfage. It is settled by the great weight of the authorities that, where a special agreement has beeen performed in part and further performance prevented by the act of the other party to the contract, the party partly performing may at his option sue on the contract and recover, or abandon the contract and recover upon a general indebitatus assumpsit.—*Hunt v. Test,* 8 Ala. 713, 42 Am. Dec. 659; 9 Cyc. p. 688, and authorities cited in note 16 on that page. The appellant could not be heard, in the face of its own action in preventing a compliance by appellee with this part of the contract, to say that the contract was not executed as to such part. There was nothing further to do to fully perform the contract, for the wharfage had been voluntarily paid by the appellant, undoubtedly with the purpose on its part of charging it against the appellee on the purchase price. The voluntary payment by the appellant would be a waiver by it of any insistence upon its part that this duty had not been performed.

If the contract as between the parties was an executed contract (and we think that under the facts and circumstances shown by the evidence it can fairly be so considered), then no duty remained but the payment of the purchase price, and, in an action to enforce this by appellee, the appellant could interpose its defense in the nature of a set-off for the amount voluntarily paid for wharfage. Of course, if the contract was executed, a recovery could be had under the common counts.— *Ezell v. King,* 93 Ala. 471, 9 South. 534; *Maas & Schwarz v. Montgomery Iron Wks.,* 88 Ala. 324, 6 South. 701; *Beadle v. Graham,* 66 Ala. 99; *Darden v. Jones,* 48 Ala. 33.

There is still another distinction between the instant case and the case of *Martin v. Massie, supra;* in fact,

it would be impossible to reconcile the facts upon which the holding in that case is grounded with the facts in the case under consideration. In the case of *Martin v. Massie* the contract was an entire contract for the performance of a service at a fixed compensation, and the defendant accepted the services as they were rendered, expecting a compliance with the entire service contracted for, and in consequence such acceptance was unavoidable, and to that extent not of his choice, from which a promise to pay could be implied. In the case before us the contract is not an entire contract in the sense of the contract in the case of *Martin v. Massie, supra,* but it is a contract to deliver, not a gross amount of lumber at a gross price, but a certain number of thousand feet of lumber at a stipulated price per thousand feet. The appellant was not in the attitude of not being able to escape accepting the lumber received by him, acting under the belief that the appellee would perform the contract according to its specific terms, for appellant knew this very condition of the contract it now claims was not complied with had not been complied with at the time it accepted the part performance and received the benefits thereof, for, when appellant paid the wharfage and received the lumber, it knew the appellee had not paid it.

The findings of the trial court, which seem to be reasonably and fairly sustained by the proof, go to show that the special contract originally entered into between the parties was once or twice subsequently changed, and, while it might be contended with some degree of plausibility that the appellee could not declare on the special contract as originally made, the facts and circumstances of this case seem to us to be such as certainly to bring it within the rule declared to be the law in that class of cases where a party has

substantially performed his contract and the benefits have been received by the other party. In such cases a remedy is given on a quantum meruit, and general indebtitatus assumpsit will lie to recover on the common counts at contract rates for the goods received, less any damages that may have been sustained by reason of a failure to make complete performance. This is exactly what the record in this case shows was the course pursued in the trial court, and the appellant successfully set off the damage it sustained by reason of the appellee's failure to pay the wharfage charges. The right to recover in such case in an action of this nature is recognized in the opinion of the court in *Martin v. Massie, supra,* when, as here, there has been no abandonment of, but a substantial compliance with, the contract, and the other party has accepted and received valuable benefits thereunder. In fact, this is a well-known and almost universally recognized rule of law when the actual circumstances of the case are such as to bring it within that rule, as we deem them to be in this case, even if the appellee could be heard to say, which we think he could not, that the contract was not fully performed.

There is nothing standing in the way of the conclusion we have reached in any of the cases cited by appellant, and, under the well-known rule applicable to reviewing the findings of the court sitting as a jury, error cannot be attributed to the trial court in its finding, and the judgment appealed from must be affirmed.

Affirmed.